Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and His Honorable Court. Good morning. This is Judge Wilson in Tampa, Judge Newsom is in Birmingham, and Judge Anderson is in Macon. And we have four appeals that are scheduled for oral argument this morning. I'd like to thank counsel in advance for making yourselves available for these arguments by telephone conferencing. And we have counsel, I would advise you that we've read the briefs and we've examined relevant parts of the record. If that will assist you in confining your arguments to the precise issues in the case. Ms. Geddes, the courtroom deputy, is the timekeeper. And she will let you know when your time has expired. And she will also provide you a two-minute warning. So, with those comments, we are ready to proceed. And we will proceed with the first case. It's Robert Escobio versus the United States Commodity Futures Trading Commission. Rhonda Ann Anderson is here for the appellate. Ann Stooks is here for the appellee. And, Ms. Anderson, are you ready to proceed with your argument? Yes, I am, Your Honor. You may. Good morning. Good morning. May it please the Court, Rhonda Anderson on behalf of Robert Escobio. We have four issues presented for appeals. The first concerns the issue of waiver, whether the district court erred in ruling that the Commodity Futures Trading Commission did not waive its claim seeking disgorgement, where the CFTC failed to seek disgorgement in its post-trial brief and its proposed findings of fact and conclusions of law, or file any post-judgment motion seeking an amendment or reconsideration of the judgment, the original judgment that was entered by the court, and where this issue was not raised on the initial appeal to this court. This court remanded the case back to the district court to consider on remand whether disgorgement is appropriate in the present case. There were no findings by the court that there was anything in the record that disgorgement was appropriate or that it was preserved for further consideration by the trial court. There are no grounds to deviate from the rules that have been set forth by this circuit in Resolution Trust v. Dunmar Court in 1995, where an issue is not preserved below or requested that it cannot be raised at this time. Ms. Anderson, this is Judge Wilson. If the court of appeals advised the district court that it may consider disgorgement and determine whether it's appropriate in the case, and the commission asked for disgorgement in its closing arguments, I fail to see how that remedy, that request for that remedy, was waived. Do you have a case that would support your position that it was waived in light of those circumstances? Is there a case where the post-trial briefs, which essentially are arguing for what the court should award, is waived at that point if you haven't even raised the issue? I would argue to the court, yes, when you have a jury verdict that goes to a proposed form that goes to a jury, and it doesn't request that relief, you have waived it at that time, and this is no different from that. This is Judge Newsom. I think, though, you're missing the wrinkle of Judge Wilson's question, which is what about the fact that we instructed the district court on remand that it was open to consider disgorgement? We specifically mentioned disgorgement. Doesn't that add a wrinkle that the cases you're citing to us don't include? It doesn't include the fact that before this court at the time was no evidence and no argument that disgorgement was or was not requested. And if you go back to the transcripts that existed of the closing arguments, counsel for Mr. Escobio argued that disgorgement was not appropriate because the basis upon which the CFTC was requesting disgorgement was based upon customer loss. And there was another exhibit that was excluded that had reportedly Berkeley's commissions, and I'll direct the court to the transcript of July 27th at pages 49 to 50. So at that point, the CFTC chose not to pursue the disgorgement argument in their post-trial briefs, requesting the relief in the same manner that you do when you put in a jury verdict form. So I do see the wrinkle that you're talking about, but I don't see the distinction here as to why the CFTC now can re-argue their case when they waive that issue in front of the trial court in the first instance. In any event, Ms. Anderson, this is an issue that we will review for an abuse of discretion. We have to find that the district court abused its discretion by awarding disgorgement, right? Yes, Your Honor. Is this your strongest issue? You have several others. I do have several others, and I'd like to move on to those as well. The second issue before the court this morning is whether or not the CFTC showed and the record showed that the ill-gotten gains, if any, that were received were in connection with a violation of the Commodities Exchange Act. I apologize, my timer stopped. We have six minutes remaining. What we have is we have an email that is from an attorney from 2014 that is purportedly Exhibit 109. We don't know how many pages Exhibit 109 was, and all we know is it is an Excel sheet regarding berkeley.com. It's undisputed that Mr. Escobio and Southern Trading Securities did not receive any money, any gains in this case. Didn't Mr. Escobio state in his brief that Trial Exhibit 109 is a spreadsheet showing commissions paid to Southern Trust Metals? Those were paid to brokers. That was not paid to Southern Trust Metals. All it reflects is the brokers. If you look at the appendix that we received from CFTC, we have a four-page exhibit, and it details on that that these were the only column that referred to even U.S. customers was F6, which totaled $15,624. No testimony came into the court that described exactly what Exhibit 109 was. Counsel, this is Judge Anderson talking. What Judge Wilson was referring to was your brief to the district court in Docket 294 at page 10, and what you say there is that this Exhibit 109 is... Oh, my God. Thank you, Felicia. I love you. I don't understand. I don't know where that came from. Okay. I'm quoting from Exhibit 109, and what you say there is this is a spreadsheet showing commissions paid to Southern Trust Metals, not to anybody else, to Southern Trust Metals, which, of course, would be your client because he's a controlling person. I don't have Exhibit 294 in front of me, but if memory serves me correctly, that was an argument that was made assuming an arguendo. This is Judge Newsom. I'll pick up on Judge Anderson's question and I think give you the quotation. It says you're pointing to the district court's earlier findings, and you say it's the law of the case that Southern Trust Metals received the fees and commissions in your brief. You're talking about the brief before the court? Yes, before the district court, 294, the one that Judge Anderson was referring to. Okay, and you're on page... Which page are you referring to? 10. Page 10. Thank you very much. Thank you. What we're getting at is you argued there to the district court not that Exhibit 109 did not show the proper amount of commissions, but rather that they weren't paid to you, that they were paid to Southern Trust, Southern Trust Metals. And the answer to that, of course, is that you are, Escobio was, as found by the district court, a controlling person, and therefore what Southern Trust Metals received, he also received. I see the language that you're talking about. I think this was primarily an argument to bring forth the fact that Mr. Escobio didn't receive a penny of any commissions in this matter. And it was not settled in there as to the amount, which brings us to a discussion of the Supreme Court's case in lieu. Ms. Anderson, was there any suggestion of a more appropriate approximation of the appropriate amount of commissions by Mr. Escobio? In the district court? In the district court. As I recall, there was an argument that there should have been deductions made based upon expenses reflected in Exhibit 109, and being that we don't have testimony that was elicited, the columns F1 through F8 appear to be those expenses. And the only commissions on here that were related to U.S. customers were those in column F6, which totaled $15,624. I would argue to the court that that would be, if anything, the gain that they're talking about. Well, you have about a minute left. Can you just briefly summarize your Eighth Amendment argument? Yes, I can summarize the Eighth Amendment argument. Here we have a case in which Mr. Escobio was already required to pay three times the amount for customer losses. We're talking rough figures here of $2 million. And the additional penalty that's placed upon him financially is, number one, unnecessary because he already has a lifetime ban, and two, it's excessive. And I see my time is up. If the court has any further questions? All right. Thank you, Ms. Anderson. I believe you've reserved some time for rebuttal, and we'll hear from Ms. Stukes on behalf of the commission. Good morning, and may it please the court. This is Anne Stukes, and I represent the appellee, the U.S. Commodity Futures Trading Commission, which, for short, I will refer to as the CFTC. The issue in this appeal is a discrete one, and it is whether the district court erred in ordering disgorgement for count four of the complaint after this court remanded for consideration of that very question. And so the question before this court is, did the district court err in ordering Defendant Robert Escobio to disgorge the amount of commissions his company charged customers for illegally brokering futures trades without being authorized to broker those trades because he was never registered with the CFTC? And the answer is this court should affirm because the district court did not err on either the law or the facts and did not abuse its discretion. The law of disgorgement awards is straightforward. There's a case, CFTC v. Ammerman, a 2016 decision of this court, which is cited in our brief and in the district court's order, that sets out the standard. It is the government's initial burden to produce a reasonable approximation of the defendant's unjust gains, but exactitude is not a requirement. This is Judge Newsom. Absolutely. If the law of disgorgement is so straightforward, why was there this sort of halting, hiccupping preservation of the issue in the district court? You might have done enough, but, you know, it's there in the complaint, it's there in the closing argument, but it's not there in the post-trial motions, it's not there in the proposed findings and conclusions. It seems to kind of come and go. Why is that? I do understand the question, and I do submit on behalf of the attorney that we did preserve it, that the record is clear. We argued during closing argument asking for a disgorgement. But Ms. Anderson notes, and as you do, Judge, in our post-trial brief, what we sought as the remedy for this case was restitution because it was a greater amount and a greater compensation for the victims, about double the amount that the victims could receive. And then when that was remanded, the district court, I mean, the panel of this court directed the district court to consider whether a different remedy would be appropriate. And I do not believe that waiver was ever in play because the unjust gains for the unlawful futures trades was always the basis of the civil monetary penalty. Under our statute, the district court has broad discretion to award disgorgement, restitution, civil monetary penalties, and injunctive relief. And the civil monetary penalties are based upon the defendant's unjust gains. And so that evidence was always in the record because the court could award up to triple the amount of the unjust gains for the civil monetary penalty. Was it perfectly smooth? Maybe it wasn't. But was it waived? No, because the CFTC requested disgorgement at trial and identified the evidence and the amount of disgorgement in its post-trial brief. And the district court accepted the figure of $360,000 in its findings and conclusions post-trial. So this evidence was in the record. It was well-preserved. And the district court committed no error in ordering disgorgement when directed to consider the issue by this court. This is Judge Anderson talking. I realize that the civil penalty could equal three times the amount of the losses, but I'm kind of doubtful that it would have been appropriate to award both restitution and disgorgement of the same amounts. Am I correct there? Well, I wonder, do you mean both disgorgement and civil monetary penalty based on the same evidence? No, no, no. No, you mean restitution. You can have that. I understand that. That's a different issue. But you, in effect, I think, chose restitution rather than disgorgement because they were the same amounts. The commissions were part of what was the restitution, and of course then the losses to the traders was part of what the restitution was. But could you have gotten both restitution and disgorgement? Could you have gotten $559,000 restitution that you sought in the district court? That is what we sought. I'm sorry, I didn't mean to cut you off. That is what we sought. Could you have gotten that plus $360,000 worth of commissions? I submit that, yes, the evidence would support that, and that there's nothing in the statute that forbids the district court from imposing disgorgement, restitution, and civil monetary penalty. So they were different amounts. Well, the disgorgement is based on the unjust gain. The restitution is based on the customer losses, and the civil monetary penalty is, again, based on the unjust gain, which can triple the amount of that gain. So this is Judge Wilson. There's no overlap between restitution and disgorgement? My recollection in this case is that the restitution was the amount of trading losses that victims suffered on these illegally placed futures trades. And when it came before this court, the court found approximate cause issue there, and that the unjust gains were measured by the commissions charged for the illegally brokered futures trades. Am I answering your question? Well, you answered the question. I'm not sure I still understand whether or not there is an overlap. I think they are different measures based upon different facts. And once the panel of this court ---- I guess what I'm asking is, are we talking about the same money or not? No. We're not talking about the same money? No, Judge, I think it's different money. I think one is the commissions that were the unjust gains that were paid to Southern Trust Metals, of which Escobio is a controlling person. And the restitution was the amount of trading losses that the customers suffered when they lost money in the market from these illegally brokered futures trades. I think those are different issues. Because it would have been favorable to you on the waiver issue if there had been overlap. It would have been even more understandable that you did not seek both the $559,000 and the $360,000. That doesn't necessarily mean you waived it, but you have candidly given away one argument. Well, I understand, but I do want to be candid with the court. I don't believe that this results in a conclusion that waiver is a proper finding here. And we appreciate that. Okay, okay. The statute allows the district court to award remedies in its discretion, and the evidence was always in the record. Even if we didn't have a paragraph in the post-trial brief, the judge could have ordered disgorgement right at the outset. And when this court directed the district court to consider disgorgement, that's an indication that there's not a waiver issue here, as you all discussed. This is Judge Wilson. I'm trying to understand this now. So the disgorgement that was awarded by the district court was limited to commissions earned, which does not go back to the victims of the commodities fraud. Is that right? That's correct. Okay, okay. Well, I think whether that disgorgement he's ordered to disgorge, I need to look back at the order. There may be a reference that all of this gets paid into a victim fund. Certainly restitution goes straight back to the victims, but the disgorgement may. I'm still confused now. There's $360,000 of unjust gains. Is that right? Correct. That was ordered disgorged? That's right. And so the victims of the commodities fraud don't get any of that money? Well, there's a separate charge in here for fraud. The unlawful brokered futures trade, the failure register, is not a fraud count. But let me just say the court monitor does have – I'm looking here at document 340, which is the final judgment. Yeah, there's a court monitor that does distribute the disgorgement amount back to customers. So that money, that $360,000 goes to the commission, to the Commodities Future Tradings Commission? It goes to a court monitor who then distributes it to the victims. Well, then that sounds like it's an overlap with restitution. It could. For me. Yeah. This is document 340 in the district court record, paragraph 6, that discusses how this disgorgement does get paid back to the victims. Which makes sense because the victims often, in effect, pay the commission when a stock is sold or bought. That's right. That's right. They did pay those commissions. They paid commissions for the privilege of trading. And Southern Trust Metals was never authorized to place those trades. I would like to touch on a couple of other issues that Ms. Anderson raised. One, on the sufficiency of the evidence, Exhibit 109. I would point out that the defendant stipulated to the admission of the trial Exhibit 109 and admitted in his brief that this is the amount of commissions that were paid. So there should be no factual dispute there. And under Tucker v. Housing Authority of Birmingham, 229 Federal Appendix at 826, a statement made in a brief can be considered an admission of fact. And in terms of this concept of joint and several liability or whether Mr. Escobio himself can be held liable for that disgorgement, Mr. Escobio was indeed the controlling person. And under the Commodity Exchange Act, 7 U.S.C. 13 C parentheses B, any person who directly or indirectly controls an entity that violates the Commodity Exchange Act is indeed principally liable for that violation and for the remedy. And the district court rightly found in this case that Mr. Escobio founded Southern Trust Metals. He was the CEO. He controlled the bank accounts. He was the boss. And the notion that he didn't individually benefit from the trading is just not supported by the record. On this concept of whether the disgorgement was an excessive fine, the disgorgement order merely sought to recover money that Mr. Escobio was never entitled to. Counsel, Jermaine, I'm calling you. Thank you, Ms. Gannis. This court doesn't need to decide whether the disgorgement order was a penalty for Eighth Amendment purposes because even if you look at it under the excessive fines analysis, it wasn't excessive. The order simply directly directed Mr. Escobio to disgorge the amount of commissions that he collected from customers for the privilege of brokering these unlawful trades. It was narrowly tailored and can't be considered grossly disproportional. And finally, this concept that he shouldn't be held accountable for disgorgement merely because he has been ordered to pay other remedies or penalties for other conduct makes no sense. It's not excessive to hold a defendant responsible for bad acts just because he has also been held accountable for other bad acts. And finally, on this question of whether SEC v. Liu, the new case that was decided during the pendency of the appeal, should be applied, we submit that this is not a proper case for determination of how SEC v. Liu would apply under the Commodity Exchange Act because the defendant never specified any costs or expenses that would legitimately be deducted and it was his burden to do so. Not only that, but the Liu case is concerned only with deduction of legitimate expenses and notes at page 19 of the slip opinion that deductions for expenses are inappropriate when the entire profit of a business results from the wrongdoing. This brokering of futures trades was wholly illegal because Mr. Scalia was not allowed to broker futures trades without being registered with the CFTC and so every bit that he earned was derived from the unlawful conduct and therefore no expenses should be deducted and none were identified anyway. I'm happy to answer any further questions, but otherwise my time is up and I thank the court for allowing us to do this by telephone and I wish everyone good health. Thank you, Ms. Fuchs. Thank you very much. And Ms. Anderson, you have reserved some time for rebuttal. Yes, I have. A couple points for the court to look at with regard to what the district court stated in its judgment at docket entry 166, page 24. The district court did find that the commissions were included as part of the total monetary gain and used to calculate the penalty awarded. And then it found that issuing disgorgement at that point would be excessive given the entry of a permanent injunction against the defendants and the requirements that the defendant make full restitution to their victims. So that full restitution was already awarded, which would mean the commissions themselves as well. So disgorgement has a purpose and the purpose is deterrence and there is no purpose of deterrence in this disgorgement award. The other point that was discussed by Ms. Fuchs regarding the final judgment at docket entry 340 was how the monies were to be paid out to the customers or the victims. And the entire paragraph does provide the monitor discretion to pay out that money as an additional civil monetary penalty despite the fact that the trial court previously found that that would be excessive given the entry of the permanent injunction against the defendants and the requirement to make full restitution. This was a registration violation. There is no showing that the trades themselves were illegal. So I would submit that the CFTC's argument that lieu is inappropriate does not fit here because the trades were legally done despite the fact that there was lacking a particular registration for doing these. With that, does the court have any further questions? With respect to the issue of deducting the expenses that are related to the commissions, it seems to me you have waived that because in your brief at page 17, you do include that in the heading, but then you do not mention it at all in the text following that heading. And furthermore, you don't suggest what the expenses are. You never point to them or indicate that the expenses were so much. Well, the initial brief that was filed pointed to column F1 as being the expenses because I did not have... I'm talking about the brief on appeal, counsel. I am too. At page 17. Yes, but I also reincorporated arguments from the earlier arguments not to just be repeating, and I pointed to column F1 as being the expenses because all I had was pages 1 and 2 of exhibit 109. I did not have pages 3 and 4. Counsel, you may have pointed to those columns in the district court. I haven't looked, but you did not do so in the brief on appeal. Am I not correct in that? I don't believe you're correct. If you look at page...it's stamped 24, at the bottom it says 14. It notes the column F1 totaling $1,470 as being... And that is in the district court? No, that's on the brief before you. Okay, my brief at page...you say at page 24? Well, the stamping at the top says 24, at the bottom it says 14. I see. Okay. But so, following up on Judge Anderson's question, even if you included this table that has an expenses column, if you will, did you ever, in words or substance, communicate the point that Judge Anderson was asking you about other than in the heading? Did you ever say that the award is erroneous because it fails to deduct expenses? I mean, clearly you made that argument in the district court. Clearly, post-lieu, you tried to make it in a 28-J, but it seems to me that Judge Anderson's point is the argument even before lieu was available to you because you made it in the district court, but you didn't make it in your blue brief. I believe it was argued in the brief. I don't have a page citation at the time. Well, I have this, Judge Anderson, again. You included that concept in your heading at page 17 of the blue brief at the bottom, the 27 at the top. Let's go by the bottom page. You have a heading there, but in the text following the heading, you say absolutely nothing about deducting expenses and certainly not pointing to any particular expenses that might have been appropriate to deduct. There are only two pages there, 17 and 18. I understand your point, and I'd note that additionally at page 20 that it's laid out that the district court failed to deduct the amount that was awarded as a civil penalty, and in essence, charged that twice. I see your argument has expired. Thank you. Thank you, Ms. Anderson and Ms. Duke.